UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| MICHAEL ALEXANDER BOWLING, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 24-140-GFVT |
| | ) | |
| v. | ) | |
| | ) | |
| KENTUCKY DEPARTMENT OF | ) | **OPINION** |
| COMMUNITY BASED SERVICES | ) | **&** |
| and CRAIG LUNSFORD, | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |

*** *** *** ***

In April 2023, Michael Bowling was arrested after allegedly pushing Amanda Couch to the ground, causing injury to their nine-month-old baby in the process. Craig Lunsford of Kentucky's Department of Community Based Services ("DCBS") concluded on November 1, 2023, that those events "substantiated" child abuse allegations against Bowling, and so added his name to a database of such persons. Most of the criminal charges against Bowling were dismissed in March 2024, after he pleaded guilty to one count of wanton endangerment. After a job offer was rescinded because his name was in the agency's database, Bowling sued DCBS and Lunsford in his official capacity for assertedly violating his due process rights by substantiating the allegations against him without first affording him a hearing. DCBS now seeks case dismissal, arguing that Bowling fails to adequately allege a protected liberty interest and that he forfeited his right to a post-substantiation hearing by pleading guilty. For the reasons stated below, the Court will deny the motion.

**I**

On April 28, 2023, a Kentucky State Police ("KSP") officer was called to Mary

Breckenridge Hospital in Hyden, Kentucky to investigate an alleged assault. According to the officer, at the hospital Couch told him that she and Bowling had gotten into an argument at her home. Couch, standing on the porch and holding her baby, began walking back into her house. Bowling then pushed Couch down, causing her to fall to the ground. Couch fell on top of the baby, whose head struck the porch, and Bowling fell on top of both of them. Jordan Baker, who was present at the hospital, corroborated Couch's statements about what happened. The KSP officer observed lacerations and bruises on the baby's head and on Couch's foot and leg. The officer drove to Bowling's home and arrested him.[1]

In June 2023, a grand jury indicted Bowling on two counts of first degree wanton endangerment in violation of Ky. Rev. Stat. 508.060; one count of fourth degree assault in violation of Ky. Rev. Stat. 508.030; one count of third degree criminal abuse to a person twelve years of age or less in violation of Ky. Rev. Stat. 508.120(1)(C); and one count of endangering the welfare of a minor in violation of Ky. Rev. Stat. 530.060. Pre-trial, Bowling entered a drug rehabilitation program and pleaded not guilty at the arraignment. In proceedings before the Circuit Court of Leslie County, Kentucky, on March 14, 2024, Bowling entered a plea pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970), to one count of wanton endangerment, a Class D felony.[2] The other

---

[1] *See* Uniform Citation in *Commonwealth v. Bowling*, No. 23-F-00031 (Leslie Dist. Ct. 2023). The case docket for the Leslie County District Court action can be viewed online at https://kcoj.kycourts.net/CourtNet/Search/CaseAtAGlance?county=066&court=1&division=DI&caseNumber=23-F-00031&caseTypeCode=FE&client_id=0 (accessed Sept. 11, 2025). The Court relays these allegations solely for context; it does not accept them as true for purposes of deciding the pending motion. *See Mills v. Barnard*, 869 F.3d 473, 486 (6th Cir. 2017).

[2] *See Commonwealth v. Bowling*, No. 23-CR-00030 (Leslie Cir. Ct. 2023), Uniform Citation. The case docket for the Leslie County Circuit Court action can be viewed online at https://kcoj.kycourts.net/CourtNet/Search/CaseAtAGlance?county=066&court=1&division=CI&caseNumber=23-CR-00030&caseTypeCode=CR&client_id=0 (accessed Sept. 11, 2025). A court may take judicial notice of undisputed information contained on government websites, *Demis v. Sniezek*, 558 F. 3d 508, 513 n.2 (6th Cir. 2009), including "proceedings in other courts of record." *Granader v. Public Bank*, 417 F.2d 75, 82-83 (6th Cir. 1969). The Court may consider such information when

charges were dismissed.  Bowling was sentenced to five years of pretrial diversion.[3]

While the criminal charges were still pending, in November 2023 Lunsford "substantiated" allegations of child abuse against Bowling.  [R. 7 at 10].  As a result, Bowling's name was placed in DCBS's "KARES" database[4] of such persons.  *See id*.  After the Sunrise Center in Hazard, Kentucky, offered Bowling employment, it performed a background check which revealed that his name was in the database, and it rescinded the job offer.  *See id*.

Through his amended complaint, Bowling invokes procedural due process rights as a mechanism to void the substantiation determination and require DCBS to afford him a hearing before an impartial tribunal if the agency wishes to reinstate it.  [R. 7 at 11].  Bowling sues Lesa Dennis, in her official capacity as the Commissioner of the Kentucky Department of Community Based Services, and Craig Lunsford, in his official capacity as the Family Services Office Supervisor of the Hyden, Kentucky office.  [R. 7 at 2].

DCBS moves to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on two grounds.  [R. 15].  First, DCBS contends that Bowling's procedural due

---

evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim without converting it into a Rule 56(a) motion for summary judgment.  *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999).

[3]  *See generally* Ky. Rev. Stat. 533.250 - 533.262.  If the defendant successfully completes the probationary period,  the charges are "dismissed-diverted" and the diversion "shall not constitute a criminal conviction."  Ky. Rev. Stat. 533.258(1).

[4]  In his complaint Bowling alleged that he was listed in the "KARES" database; in his response, he alleges that he was listed in the "Child Abuse and Neglect (CAN) registry."  *See* [R. 19 at 5].  It is not clear that the difference will be material, but given procedural posture the Court accepts as true only the allegations contained in the amended complaint.  *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020) ("a court evaluating a motion for judgment on the pleadings (or a motion to dismiss) must focus only on the allegations in the pleadings. … Plaintiffs cannot [] amend their complaint in an opposition brief or ask the court to consider new allegations (or evidence) not contained in the complaint.") (citations omitted).

process claim necessarily fails because he does not allege that he was rejected for a job based upon any statutory impediment or prohibition above and beyond the stigma caused by the presence of his name on its registry. *See id.* at 5. Second, DCBS states that after a person is placed on the registry they can challenge the substantiation determination before a neutral hearing officer, thus providing a post-deprivation remedy to satisfy procedural due process requirements. *See id.* However, DCBS posits, Bowling is not entitled to any such hearing because he pleaded guilty to the very facts that warranted the substantiation finding. *See id.* at 6-7 (*citing* 922 KAR 1:480 § 4(1)(b)). The Court addresses these arguments in turn.

## II

## A

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the plaintiff's complaint. *Gardner v. Quicken Loans, Inc.*, 567 F. App'x 362, 364 (6th Cir. 2014). When addressing a motion to dismiss, the Court views the complaint in the light most favorable to the plaintiff and accepts as true all 'well-pleaded facts' in the complaint. *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014). A complaint must contain allegations, either expressly stated or necessarily inferred, with respect to every material element necessary to sustain a recovery under some viable legal theory. *Philadelphia Indem. Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir. 2013). But the complaint must be dismissed if it undoubtedly fails to allege facts sufficient to state a facially-plausible claim. *Republic Bank & Trust Co. v. Bear Stearns & Co.*, Inc., 683 F.3d 239, 247 (6th Cir. 2012). Conversely, a complaint can sometimes say too much: a plaintiff can "plead himself out of court" by alleging facts which demonstrate that he is not entitled to relief. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008).

Ordinarily, the sufficiency of the complaint is tested with reference only to the face of the

4

complaint itself. *Burns v. United States*, 542 F. App'x 461, 466 (6th Cir. 2013). This includes, of course, documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The Court may also consider "other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice." *Ashland, Inc. v. Oppenheimer & Co.*, 648 F.3d 461, 467 (6th Cir. 2011). If a plaintiff refers to a document in the complaint and it is central to her claim, the document will be considered part of the pleadings even if the plaintiff did not attach it to her complaint if the defendant attaches it to the motion to dismiss. *Campbell v. Nationstar Mtg.*, 611 F. App'x. 288 (6th Cir. 2015) (*citing Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997)). *See also Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011). The Court considers DCBS's motion with these standards in mind.

**B**

The Due Process Clause of the Fourteenth Amendment bars a State from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. This protection encompasses substantive and procedural components: "substantive due process prohibits the government's abuse of power or its use for the purpose of oppression, and procedural due process prohibits arbitrary and unfair deprivations of protected life, liberty, or property interests without procedural safeguards." *Howard v. Grinage*, 82 F.3d 1343, 1350 (6th Cir. 1996). This case concerns only the latter. *See* [R. 7 at 10].

The Supreme Court has explained that:

> We examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.

*Kentucky Dept. of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted). Under the

5

first analytical step, to determine whether a liberty or property interest is at stake when the claim is based upon asserted harms to present or future employment, the Court utilizes the "stigma-plus" test articulated by the Supreme Court in *Paul v. Davis*, 424 U.S. 693 (1976). Under this test, the state must do more than take action which merely stigmatizes or defames the plaintiff; it must also remove or significantly alter a status recognized and protected by state law and previously held by the plaintiff. *Paul*, 424 U.S. at 709-12.

## C

Here, DCBS asserts that "the fact [Bowling] was not hired is presumably attributable to his appearance on the central registry," but not to any additional impediment created by state law. *See* [R. 15 at 5]. Bowling responds that state law prohibits certain kinds of organizations from employing anyone whose name appears on the register, including community mental health centers, *see* 902 KAR 20:091, § 4(2)(a)(3); behavioral health services organizations, *see* 902 KAR 20:430, § 4(6)(a)(3); and alcohol and other drug treatment entities, *see* 908 KAR 1:370, § 15(2). *See* [R. 19 at 3, 6]. Bowling asserts that the Sunrise Center, which rescinded a job offer previously made to him, is a mental health center governed by 902 KAR 20:091. *See id.* at 6. Such kinds of state-imposed restrictions might satisfy the "plus" requirement. *See Smith ex rel. Smith v. Siegelman*, 322 F.3d 1290, 1297 (11th Cir. 2003) (collecting cases).[5] The Court concludes that

---

[5] The decisional law is unclear whether and to what degree the job opportunities foreclosed must fall within the plaintiff's "chosen profession." Courts appear to assume that such a requirement, if it exists, is satisfied where an existing employee is terminated, but a question may arise where the plaintiff is applying for a new position. In this case, the record does not indicate whether the job for which Bowling applied was one within his chosen profession by virtue of formal education, training, or experience. Still, there is authority that barriers to employment in a position for which the plaintiff has applied can satisfy the stigma-plus test. *Cf. Williams v. Cuyahoga Cty.*, 776 F. Supp. 3d 653, 668-69 (N.D. Ohio) (allegation that plaintiff was rejected for job at youth shelter adequately pleaded stigma-plus claim; "the Fourteenth Amendment does not require the complete deprivation of a chosen profession."), *appeal pending*, No. 25-3346 (6th Cir. 2025); *Carey v. Bennett*, No. 17-CV-1314-JES-TSH, 2020 WL 130125, at *3 (C.D. Ill. Jan. 10, 2020). *See also Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 185 (1951) (Jackson, J., concurring) ("Administrative machinery is publicly

6

given procedural posture, spare briefing devoted to the topic, and the limited record before it, Bowling's complaint sufficiently alleges that he possesses a property or liberty interest protected by the Due Process Clause.

The second step of the analysis requires the Court to determine whether the process afforded was constitutionally sufficient. The process due is context-specific:

> Procedural due process at its core requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner. Accordingly, the Due Process Clause is flexible and calls for such procedural protections as the particular situation demands. … Consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.

*Garcia v. Fed. Nat. Mortg. Ass'n*, 782 F.3d 736, 741 (6th Cir. 2015) (cleaned up). Generally, a deprivation must "be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). Therefore in most cases, "when a deprivation occurs through an established state procedure, then it is both practicable and feasible for the state to provide pre-deprivation process, and the state must do so regardless of the adequacy of any post-deprivation remedy." *Johnson v. City of Saginaw, Mich.*, 980 F.3d 497, 508 (6th Cir. 2020) (cleaned up).

In some circumstances, such as where the "necessity of quick action renders pre-deprivation process impossible or impracticable," *Johnson*, 980 F.3d at 508, post-deprivation process may be sufficient, *Novak v. Federspiel*, 140 F.4th 815, 821 (6th Cir. 2025). This rule was derived in *Parratt v. Taylor*, 451 U.S. 527 (1981), a case involving "random and unauthorized"

---

set up to comb the whole government service to discharge persons or to declare them ineligible for employment upon an incontestable finding, made without hearing, that some organization is subversive. To be deprived not only of present government employment but of future opportunity for it certainly is no small injury when government employment so dominates the field of opportunity.").

action by state officials. However, the Sixth Circuit has applied the *Parratt* doctrine sparingly in certain circumstances "even when an action is neither random nor unauthorized." *Johnson*, 980 F. 3d at 508 (cleaned up; *citing Harris v. City of Akron*, 20 F.3d 1396, 1402-05 (6th Cir. 1994) (holding that *Parratt* doctrine excused pre-deprivation process for emergency demolition of decaying home even though the demolition process was "authorized" and performed under "established procedures")). On the other hand, where the State could feasibly provide a pre-deprivation hearing, it must provide one, and the plaintiff need not address or establish the inadequacy of a post-deprivation hearing. *Id*. at 508 n.4 (*citing Silberstein v. City of Dayton*, 440 F.3d 306, 315 (6th Cir. 2006)).

In his complaint, Bowling alleges that DCBS did not provide any hearing before it substantiated the child neglect finding. *See* [R. 7 at 10]. DCBS acknowledges that this is correct. *See* [R. 20 at 4-5]. The Court struggles to make heads or tails of DCBS's argument why its approach was reasonable and necessary. The agency argues:

> Giving Plaintiff notice once the finding of substantiation has been made is reasonable. To begin, no hearing is provided if an allegation is unsubstantiated. The Cabinet would have no reason to provide a hearing to someone it has found either did not abuse or neglect a child or against whom there was insufficient evidence to substantiate abuse or neglect of a child. Thus, the suggestion that a hearing before substantiation would not increase the number of hearings is preposterous. Moreover, notifying Plaintiff of the substantiation after it occurred cannot be the basis of a due process violation as the Cabinet cannot notify him of a decision that has not yet been made. The substantiation is literally just the finding or conclusion reached by the Cabinet in its investigation.

[R. 20 at 5]. That no hearing is provided if DCBS does **not** substantiate the neglect allegation is permissible precisely because the agency will not visit any deprivation upon the party in question. Because a substantiation finding could or would impose such a deprivation, a prior hearing with notice is required in the absence of exigent circumstances rendering prior notice and an opportunity to be heard impracticable. *Johnson*, 980 F.3d at 508. In this case, the substantiation finding

8

appears to have occurred in the normal course of DCBS's operations, generally requiring a pre-deprivation hearing. Further, the alleged assault and resulting criminal charges occurred on April 28, 2023. *See* note 1, *supra*. DCBS did not substantiate the child abuse or neglect allegation until November 1, 2023. *See* [R. 7 at 10]. Given Bowling's allegation that DCBS failed to provide him with a pre-deprivation hearing during the entirety of the six-month span between those events, his complaint adequately alleges a procedural due process violation.[6]

The foregoing conclusion is sufficient to require denial of DCBS's motion to dismiss. In addition, even in the rare circumstance where a post-deprivation hearing is permitted in lieu of a prior one, that remedy must be adequate. Here, the agency's position with respect to the availability of a post-deprivation hearing establishes that under these facts that right is functionally illusory. DCBS indicates that ordinarily a party who is the object of a substantiation finding "may appeal the cabinet's investigative finding through an administrative hearing." *See* 922 KAR 1:480 § 2. But DCBS argues that Bowling is not entitled to appeal at all because, it contends, he was "criminally charged and convicted of an action that is the basis of the cabinet's finding of abuse or neglect of a child." *See* [R. 15 at 6-7 (*citing* 922 KAR 1:480 § 4(1)(b))]. The cited regulation permits DCBS to deny the subject of its investigation any hearing at all if it decides – in its apparently-unreviewable judgment – that a criminal conviction encompasses conduct "that is the basis of the cabinet's finding of abuse or neglect of a child."

DCBS asserts that under this provision Bowling has no right to appeal the substantiation

---

[6] This is not to say that DCBS could not later establish facts demonstrating the need to make its substantiation finding without providing a hearing beforehand, only that such facts are not set forth in the complaint or evident in the record. For instance the record does not disclose when, post-arrest, it received the allegations against Bowling, who made them, upon what facts they were based (including whether the events precipitating the arrest was or was not the basis for them), or any extrinsic circumstances present at the time which may have necessitated an immediate determination prior to a hearing.

finding because it has concluded that his conviction for wanton endangerment against Amanda Couch – not the baby itself – establishes that the facts underpinning its substantiation determination did in fact transpire. That position is untenable for several reasons. First, its necessary predicate is not established by the record in this Court. While DCBS correctly notes that this Court may take judicial notice of records from other courts, *see* note 2, *supra*, the agency failed to file authenticated copies of any of the pertinent court documents into the record in this case. While the docket of the proceedings in the Leslie District and Circuit Courts are available online, none of the documents necessary to ascertain the factual basis for each of the criminal offenses with which Bowling was charged and/or convicted are present or reviewable. *See id.* The indictment, the Commonwealth's Offer on a Plea of Guilty, the Motion to Enter Guilty Plea, and the Order Granting Motion for Pretrial Diversion for Class D Felony are only referenced in the docket. And neither referenced nor available is any written plea agreement, transcript of an in-court plea colloquy, or judgment (if any). These documents are therefore not retrievable in electronic format or otherwise before the Court to permit the taking of judicial notice.[7] Thus, while it is true that preclusion doctrines may bar relitigation of issues actually decided in a prior criminal proceeding, *Anderson v. City of Blue Ash*, 798 F.3d 338, 351-52 (6th Cir. 2015), the record does not make clear what factual issues were actually decided, in *either* the criminal case or as part of DCBS's substantiation finding.

More fundamentally, DCBS's position disentitles Bowling to *any* hearing, before or after its substantiation finding, to challenge its conclusion that his criminal conviction conclusively

---

[7] Notably, while Bowling pleaded guilty to the wanton endangerment charge, the other remaining charges were dismissed. Among them were charges for criminal abuse to a person twelve years of age or less and for endangering the welfare of a minor, criminal charges far more specific to DCBS's concerns and more likely to support its substantiation finding.

resolves the allegation of abuse or neglect against him.  The agency cites to no authority holding or even suggesting that such a regulatory regime is consonant with procedural due process rights. The viability of that position appears tenuous.  *Cf. Prasad v. Santa Clara Dept. of Soc. Servs.*, 685 F. App'x 538, 540 (9th Cir. 2017) (holding that if the plaintiff "succeed[s] in having the child abuse allegation removed from [one registry], it appears that the same allegation will remain in [a second registry] without any mechanism for challenging its inclusion in that database.  If so, at that point Prasad may have a plausible due process claim.") (*citing Castillo v. Cty. of Los Angeles*, 959 F.Supp.2d 1255, 1257-58, 1264 (C.D. Cal. 2013)).

### III

DCBS has not demonstrated that Bowling's complaint fails to adequately plead a claim for relief.  In light of the foregoing, the Court will deny the motion to dismiss and direct the defendant to file an answer.  The Court will also refer this matter to a Magistrate Judge for pretrial management.

Accordingly, it is **ORDERED** as follows:

1.      Defendant's Motion to Dismiss [R. 15] is **DENIED**.

2.      Defendant shall **FILE** an answer to the amended complaint within twenty-one (21) days after entry of this Order.

3.      Pursuant to 28 U.S.C. § 636(b) and General Order 23-10(8), this matter is **REFERRED** to United States Magistrate Judge Hanly A. Ingram to conduct all pretrial proceedings, including preparing proposed findings of fact and conclusions of law on any dispositive motions.

This the 25th day of September, 2025.

Gregory F. Van Tatenhove
United States District Judge